# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| EDDIE L. PHENIX, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | No. 4:09-CV-1648 CAS |

## MEMORANDUM AND ORDER

This matter is before the Court pursuant to the Report and Recommendation of United States Magistrate Mary Ann Medler, filed September 21, 2010. See 28 U.S.C. § 636(b). The Magistrate Judge recommended that the decision of the Commissioner denying plaintiff's application for supplemental security income benefits under Title XVI of the Social Security Act 42 U.S.C. §§ 1381, et seq., be affirmed. Plaintiff filed objections to the Report and Recommendation, to which the defendant responded.

Following de novo review of the objections and record in this matter, the Court finds that it does not concur in the recommendation of the Magistrate Judge. United States v. Lothridge, 324 F.3d 599, 600 (8th Cir.2003) (citing 28 U.S.C. § 636(b)(1)). For the following reasons, the Court will remand the case to the Commissioner with instructions to reconsider plaintiff's claim.

### I. Background

On January 9, 2007, plaintiff filed an application for supplemental security income (SSI) under Title XVI. Tr. at 95. The claim was denied. Tr. 57, 59-63. On October 10, 2008, following a hearing, an administrative law judge (ALJ) found that plaintiff was not under a "disability" as defined

in the Social Security Act. Tr. 13-21. On August 6 and October 29, 2009, the Appeals Council of the Social Security Administration denied Plaintiff's requests for review . Tr. 1-7. Thus, the decision of the ALJ stands as the final decision of the Commissioner.[1]

### A. Plaintiff's Medical Records

Plaintiff, who was born February 10, 1967, claimed that he became disabled beginning on August 1, 2006. Tr. 95. In forms filed in connection with his claim, plaintiff alleged disability due to a stroke on his right side, depression, high blood pressure, and back pain. Tr. 100, 142.

#### 1. St. Louis University Hospital Emergency Room Visit

Plaintiff presented to St. Louis University Hospital on October 16, 2006, reporting difficulty walking and symptoms affecting both lower extremities. Tr. 167, 171. He stated that he had experienced an unsteady gait since February 2006, had pain in his left leg when walking, and had discomfort in his left and right upper quadrants. Tr. 171. Plaintiff demonstrated an unsteady gait, although he was able to walk heel to toe. Tr. 172-73.

At the hospital, plaintiff was examined by a doctor in the emergency room, Dr. Wade, who ordered a computerized tomography (CT) scan and a referral to a neurologist. Plaintiff was seen that same day by resident neurologist, Sherman Chan, M.D., who conducted a neurology examination. The doctor noted a history of ataxis,[2] mild difficulty maintaining balance while walking, blurred vision bilaterally for one year, and history of significant alcohol abuse. Dr. Chan reviewed the CT results, which showed no significant abnormalities. Tr. 181-84. After examining plaintiff and reviewing the

---

[1]Plaintiff has since been awarded supplemental security income benefits under Title XVI. The Commissioner found he met the qualification for benefits beginning August 17, 2009.

[2]Ataxia is the failure or irregularity of muscular coordination. See Dorland's Illustrated Medical Dictionary 1164 (29th ed. 2000) (Dorland's).

2

test results, Dr. Chan's impressions were: "1. Atxia right side cerebellum signs; 2. DDX: Stroke vs. neoplasm vs. alcohol induced with progressive nature." It was recommended that plaintiff be admitted to the hospital for "further diagnostic work up of CVA."[3]  Tr. 168.  Plaintiff declined admission stating that he needed to care for a family member.

### 2. Riaz Naseer, M.D.

On March 10, 2007, plaintiff was seen by a consulting neurologist, Riaz Naseer, M.D.  Dr. Naseer did not have plaintiff's past medical records to review.  Plaintiff self-reported that he had experienced a stroke in October 2006, and that he had depression and hypertension.  Tr. 194. Plaintiff came to the visit using a cane, which belonged to his mother.  Plaintiff had great difficulty getting on and off the examining table without losing his balance.  Tr. 195.  Upon examination, Dr. Naseer found plaintiff's extraocular movements were full, but he had bilateral coarse nystagmus.[4] The doctor noted plaintiff had significant ataxia, and dysmetria[5] on finger to nose to finger bilaterally. Plaintiff had difficulties standing on his heels, he was unable to perform a heel to toe walking test, and a Romberg test was strongly positive.  Tr. 195.  Dr. Naseer's clinical impression was that plaintiff had "brain stroke with bilateral nystagmus, poor tandem, difficulties maintaining balance."  Tr. 195.  Dr. Naseer also opined that plaintiff would be unable to ambulate without any assistive device; that his reflexes were abnormal; that he had moderately severe depression by simple clinical examination; and

---

[3]Cerebrovascular accident, also known as a stroke.  See Stedman's Medical Dictionary 323, 440, (27th ed. 2000) ("Stedman's).

[4]Nystagmus is an involuntary, rapid, and rhythmic movement of the eyeball.  See Dorland's at 158.

[5]Dysmetria is an "aspect of ataxia, in which the ability to control the distance, power and speed of an act is impaired."  See Stedman's at 553.

3

that he would have difficulties in performing the basic tasks, even sitting in the chair or at a desk. Tr. 195-96. Dr. Naseer did not complete a Residual Functional Capacity ("RFC") form.

### 3. Lynn Mades, Ph.D.

Lynn Mades, Ph.D., conducted a consultative psychological examination on April 9, 2007. Tr. 202-07. Plaintiff told Dr. Mades that he had suffered a stroke in October 2006, that he had been depressed since 2004, and that he had stopped taking his hypertension medication. Tr. 202-03. Dr. Mades stated that plaintiff appeared to minimize his alcohol use based on his medical records.[6] She observed that plaintiff had a slightly shuffled gait and used a cane. She observed that plaintiff's mood was euthymic, but that his verbal judgment was poor to fair. Tr. 203-04. She stated that plaintiff's thought was logical and sequential, found no evidence of thought disturbance, and opined that his insight and judgment were slightly limited. Tr. 204-05.

Dr. Mades administered the Test of Memory Malingering (TOMM) and wrote that plaintiff's score on the second trial "raises serious concerns about whether or not he was putting forth his best effort, and may suggest malingering." Tr. 205. Dr. Mades diagnosed plaintiff with alcohol abuse and assigned him a Global Assessment of Functioning (GAF) score of 75.[7] Tr. 206. She also noted that

---

[6]Dr. Mades reviewed plaintiff's medical records from his emergency room visit on October 16, 2006, but she did not have records from Dr. Naseer.

[7]Global assessment of functioning, or GAF, is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 30-32 (4th ed. Text Rev. 2000) (DSM-IV-TR). A GAF score of 71-80 evidences transient and expected reactions to psychosocial stressors, when symptoms are present (e.g. difficulty concentrating after family argument), and no more than slight impairment in social, occupational, or school functioning (e.g. temporarily falling behind in schoolwork). DSM-IVTR 34.

4

although plaintiff complained of depression, his "reported symptoms were minimal, he did not appear depressed during this exam, and thus did not appear to qualify for any clinical diagnosis at this time." Tr. 206.

### 4. John Hartweger, M.D.

On June 4, 2007, plaintiff visited John Hartweger, M.D., for difficulty walking. Plaintiff complained of back pain related to maintaining his balance, hypertension, and depression. Tr. 225. It was noted that he used a cane to walk. Plaintiff also reported that he had suffered a stroke in October 2006.

In his report, under the section "Function status," Dr. Hartweger wrote: "Physical disability R arm weakness and R leg weakness, difficulty walking, balancing. Tires easily." Tr. 226. Upon exam, back tenderness was noted over the LS paraspinous muscle; plaintiff's gait and stance were abnormal and limping was observed. Deep tendon reflexes were abnormal and increased over right upper extremity and lower extremity. Tr. 227-28. Plaintiff was diagnosed with benign essential hypertension, depression, acne, back pain, tobacco abuse, and right knee pain. Dr. Hartweger prescribed plaintiff Naproxen,[8] Retin A,[9] Celexa,[10] Doxycycline Hyclate,[11] Toprol,[12] and adult

---

[8]Prescribed to relieve signs and symptoms of osteoarthritis, rheumatoid arthritis and ankylosing spondylitis. Physicians Desk Reference 761 (65th Ed. 2011) ("PDR")

[9]Cream commonly used to treat acne. PDR at 124.

[10]Drug prescribed to treat depression. PDR at 118.

[11]Antibiotic used to treat, among other things, acne. PDR at 119.

[12] Selective ß1 receptor blocker used in treatment of several diseases of the cardiovascular system, including hypertension. PDR at 724.

chewable aspirin. Dr. Hartweger also referred plaintiff to Hopewell Clinic for mental health care. Tr. 228.

Plaintiff returned to Dr. Hartweger on June 22, 2007. He reported hypertension, backaches, difficulty walking, weakness in his right side, and depression. His blood pressure had improved on medication. The doctor also noted that plaintiff had an improved mood on medication and that he had attended counseling at Hopewell Clinic that week. It was noted that plaintiff's back pain had improved with Naproxen, but he still had significant pain with walking or movement. Dr. Hartweger continued plaintiff on the same medication, but he added Tramadol for break through back pain. Tr. 223-25.

Plaintiff did not return to Dr. Hartweger until April 3, 2008. It was noted that plaintiff reported to have difficulty ambulating and weakness in right lower extremities. Upon exam, Dr. Hartweger noted pain in several joints and right leg weakness. Plaintiff's gait and stance were abnormal. The doctor's assessment was hypertension, history of CVA, back pain, depression and acne. The doctor directed that plaintiff continue his medication and continue counseling at Hopewell Clinic. He was also referred to a dermatologist for acne, and to a physical therapist for weakness. Tr. 220-22.

> 5. **Hopewell Clinic**

On June 20, 2007, plaintiff was evaluated by Jeanette Loftus Wall, L.C.S.M., at Hopewell Clinic. Plaintiff reported that he had been depressed for four years due to the end of a romantic relationship, a stroke, and his housing situation. He reported that he drank beer three times a week. It was noted that his appearance was unkept, and that he walked with a cane. Plaintiff indicated that he was unable to work due to a stroke and depression, and that financial problems prevented him

from seeing a physician. Plaintiff was also seen by Ms. Walls on July 5 and 31, 2007, and he was encouraged to see a doctor. Tr. 233-39.

On September 15, 2007, plaintiff returned and saw Dr. J. Calhounm, a psychiatrist, who diagnosed plaintiff with depressive disorder. Plaintiff was prescribed Prozac. Plaintiff returned on November 10, 2007, and his mood and affect appeared less depressed, but he still had negative thoughts and some thought disorder. Plaintiff was continued on his medication. Tr. 231-32.

On January 14, 2008, plaintiff was seen by Dr. Oruwari, another psychiatrist. Tr. 230. Plaintiff reported that he was doing better, but that he was sleeping a lot. Dr. Oruwari increased the dosage of plaintiff's medication. Dr. Oruwari assigned plaintiff a GAF score of 58.[13] Plaintiff returned on April 7, 2008. He reported feeling better, and he was continued on his medications. Tr. 231.

Plaintiff visited Dr. Oruwari on July 14, 2008. He reported that he had a disability hearing and appeared very nervous and upset. He reported that his mood was fine, but he was not sleeping. He continued to be treated with medication for major depressive disorder. Plaintiff's GAF remained 58. Tr. 353.

Plaintiff returned on November 7, 2008, and was seen by Ms. Wall. He discussed being anxious and nervous about his health and disability application. Tr. 352.

Plaintiff was seen by Dr. Oruwari on December 4, 2008. Tr. 351. Plaintiff reported that he was more reclusive, more depressed, and that his mood was down. Dr. Oruwari continued plaintiff's medication and again assessed plaintiff a GAF score of 58. On December 4, 2008, Dr. Oruwari

---

[13]A GAF of 51-60 represents moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). DSM-IV-TR at 34.

7

completed a mental assessment form, in which he indicated that plaintiff had major depressive disorder. He opined that plaintiff had moderate limitation in his ability to cope with normal work stress, function independently, behave in an emotionally stable manner, be reliable, relate in social situation and interact with the general public, understand and remember simple instructions, make work related decisions, maintain regular attendance and punctuality, complete a normal work day and work without interruptions from mental symptoms, maintain attention and concentration for extended periods of time, perform at a consistent pace without an unreasonable number and length of rest periods, sustain an ordinary routine without special supervision, respond to change in work setting, and work in coordination with others. He also noted plaintiff was unable to stick to a task and had substantial loss in understanding, remembering, and carrying out simple instructions. Tr. 354-56.

On July 1, 2009, Ms. Walls also completed a mental assessment form. She found plaintiff had marked limitations in his ability to function independently, behave in an emotionally stable manner, interact with the general public, accept instructions and respond to criticism, act in a socially acceptable behavior, understand and remember instructions, make simple work-related decisions, and maintain regular attendance and punctuality. She noted extreme limitations that totally limit his ability to cope with normal work stress, such as not being able to complete a normal work day or week, maintain attention and concentration for extended periods, perform at a consistent pace, sustain an ordinary routine without special supervision, and respond to change in the work place. She further opined that plaintiff had a substantial loss in his ability to stick with a task, understand, remember or carry out simple instructions, make judgments that are comparable with the function of unskilled work, and he would be unable to respond appropriately to supervisors, co-workers and unusual work

8

situations. Her diagnosis was major depression, and she assigned plaintiff GAF score of 40.[14]  Tr. 374-77.

### 6. St. Louis University Hospital

Plaintiff went to the hospital on July 22, 2008, complaining of chest pain. Tr. 252. An x-ray of his chest was unremarkable and showed no acute cardiopulmonary abnormality. Tr. 315. An echocardiogram was unremarkable and revealed nothing abnormal. Tr. 318. A CT scan of his brain was unremarkable and showed no acute intracranial process. Tr. 314.

### 7. Homer G. Phillips Clinic

Plaintiff was seem by Dr. Lawrence Wells on September 10, 2008. Plaintiff reported that his exercise tolerance had decreased over the last 4-5 months. He reported that he could only walk a half an hour before becoming fatigued, having chest pain, and leg pain. He stated that his legs shook and felt like they are going to give out. He reported hypertension, depression, CVA with residual right-sided weakness, and back pain. Plaintiff was walking with a cane and was given disability parking application. Tr. 366-67.

### 8. Andrea Davis, M.D.

On November 5, 2008, plaintiff was seen by Andrea Davis, M.D. Plaintiff complained to Dr. Davis of back pain. On exam, tenderness was noted on lumbar and paraspinal muscles, and his cervical spine exhibited a muscle spasm. Plaintiff was diagnosed lumbago with degenerative joint disease and was prescribed Motrin. Tr. 342-44.

---

[14]A GAF of 31-40 evidences some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school). DSM-IV-TR at 34.

9

### B. Testimony at the Administrative Hearing

An administrative hearing was held on July 10, 2008. At the hearing, plaintiff testified that he went to St. Louis University Hospital in October 2006 with pain and stiffness. He testified that he was told that he had experienced a stroke and that the doctors had wanted to admit him, but he could not because he needed to take care of his mother who is blind and diabetic. He reported that after the emergency room visit he continued to have problems walking, standing, and sitting. He reported difficulties with balance. He stated that he uses his mother's cane if he has to walk more than four to five blocks. He testified that he cooks and washes dishes and does some grocery shopping. He also assists his mother with her insulin shots and does his own laundry. He reported that because of his depression he often does not bathe or wash his clothes and he stays in his room and frequently gets upset with people. Plaintiff stated that he was taking Prozac and undergoing counseling at Hopewell Clinic for his depression. He spends his days watching TV and visiting a neighbor. Plaintiff testified that he was fired from his most recent job as a janitor and porter, after which he drew unemployment benefits. He stated that he had an eighth grade education and had not obtained his GED. At the close of the hearing, plaintiff's counsel asked the ALJ to order testing for plaintiff's intelligence quotient (IQ). The ALJ declined, noting no obvious intellectual deficit. Tr. 24-55.

### C. The ALJ Decision

The ALJ found plaintiff had the impairments of hypertension, depressive disorder controlled by medication, and history of alcohol abuse, but he found that plaintiff did not have an impairment or combination of impairments listed in or medically equal to one contained in 20 C.F.R. pt. 404, subpt. P, app. 1. Tr. 20. The ALJ found that plaintiff retained the residual functional capacity (RFC)

to perform the physical exertional and nonexertional requirements of all work, except possibly for lifting or carrying more than 25 pounds frequently or more than 50 pounds occasionally. Tr. 20. He found no credible, medically-established mental or other nonexertional limitations. The ALJ further found that plaintiff's impairments would not preclude him from performing his past relevant work as a janitor or porter. Tr. 21. Consequently, the ALJ found that plaintiff was not disabled within the meaning of the Act. Tr. 21.

## II. Standard of Review and Statutory Framework

A claimant for social security disability benefits must demonstrate that he or she suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1). The Social Security Act defines disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than 12 months." 20 C.F.R. § 404.1505(a).

To determine whether a claimant is disabled, the Commissioner engages in a five step evaluation process. See 20 C.F.R. § 404.1520(b)-(f). Those steps require a claimant to show: (1) that he is not engaged in substantial gainful activity; (2) that he has a severe impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities; or (3) he has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1; (4) he is unable to return to his past relevant work; and (5) his impairments prevent him from doing any other work. Id.

The district court must affirm the decision of the ALJ if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence 'is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion.'" Cruse v. Chater, 85 F.3d 1320,

1323 (8th Cir. 1996) (quoting Oberst v. Shalala, 2 F.3d 249, 250 (8th Cir. 1993)). The Court does not re-weigh the evidence or review the record de novo. Id. at 1328 (citing Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992)). Instead, even if it is possible to draw two different conclusions from the evidence, the Court must affirm the Commissioner's decision if it is supported by substantial evidence. Id. at 1320; Clark v. Chater, 75 F.3d 414, 416-17 (8th Cir. 1996).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court must review the administrative record as a whole and consider: (1) the credibility findings made by the ALJ; (2) the plaintiff's vocational factors; (3) the medical evidence from treating and consulting physicians; (4) the plaintiff's subjective complaints regarding exertional and non-exertional activities and impairments; (5) any corroboration by third parties of the plaintiff's impairments; and (6) the testimony of vocational experts when required which is based upon a proper hypothetical question that sets forth the plaintiff's impairment(s). Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-586 (8th Cir. 1992); Brand v. Secretary of Health Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

The ALJ may discount plaintif's subjective complaints if they are inconsistent with the evidence as a whole, but the law requires the ALJ to make express credibility determinations and set forth the inconsistencies in the record. Marciniak v. Shalala, 49 F.3d 1350, 1354 (8th Cir. 1995). It is not enough that the record contain inconsistencies; the ALJ must specifically demonstrate that he or she considered all the evidence. Id. at 1354; Ricketts v. Secretary of Health & Human Servs., 902 F.2d 661, 664 (8th Cir. 1990).

When a plaintiff claims that the ALJ failed to properly consider subjective complaints, the duty of the Court is to ascertain whether the ALJ considered all of the evidence relevant to plaintiff's

complaints under the Polaski[15] standards and whether the evidence so contradicts plaintiff's subjective complaints that the ALJ could discount his testimony as not credible. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). If inconsistencies in the record and a lack of supporting medical evidence support the ALJ's decision, the Court will not reverse the decision simply because some evidence may support the opposite conclusion. Marciniak 49 F.3d at 1354.

### III. Discussion

The Court agrees with plaintiff that the ALJ improperly discounted the opinion of Dr. Naseer. Dr. Naseer opined that plaintiff had "brain stroke with bilateral nystagmus, poor tandem, difficulties maintaining balance." Tr. 195. Dr. Naseer also opined that plaintiff would be unable to ambulate without any assistive device; that his reflexes were abnormal; that he had moderately severe depression by simple clinical examination; and that he would have difficulties in performing the basic tasks, even sitting in the chair or at a desk. Tr. 195-96. The ALJ discredited Dr. Naseer's opinion because the doctor "apparently took all of the claimant's signs and symptoms at face value and did not even review the medical records from the October 2006 emergency room visit, including the negative CT scan of the brain. There was no diagnostic conclusion of a stroke at that time." Tr. 17.

The Court does not agree with the ALJ's characterization. Dr. Naseer's opinion was based on medical evidence, and it was not inconsistent with the hospital records from October 16, 2007. Dr. Naseer did not merely speak with plaintiff, but he observed him and completed what appears to have been a thorough neurological examination. It was Dr. Naseer's medical opinion, based on that

---

[15]The Polaski factors include: (1) the objective medical evidence; (2) the subjective evidence of pain; (3) any precipitating or aggravating factors; (4) the claimant's daily activities; (5) the effects of any medication; and (6) the claimants functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

13

examination, that plaintiff exhibited symptoms that were indicative of a stroke, and, by simple examination, that plaintiff had depression. An opinion based on observations made during a physical examine is medical evidence. Miller v. Astrue, 2010 WL 4813618, at *1 (8th Cir. Nov. 29, 2010) (noting physician's observations of plaintiff's psychological and physical functioning during examination were objective medical evidence).

Furthermore, the stroke diagnosis was not, as the ALJ suggests, inconsistent with the hospital records from October 16, 2007.[16] During his hospital visit, plaintiff underwent a CT, which showed no abnormalities. But plaintiff was then examined at the hospital by a resident neurologist, who after examining plaintiff and reviewing the results of the CT, found plaintiff may have suffered a stroke. Tr. 183. Dr. Naseer's opinion that plaintiff had a brain stroke with bilateral nystagmus, poor tandem, and difficulties maintaining balance is not inconsistent with the hospital medical records. What is more, his opinion is not inconsistent with the observations of Dr. Hartweger and the medical personnel at Hopewell Clinic. Dr. Hartweger observed plaintiff had an abnormal gait and reflexes, difficulty balancing and that he had weakness on his right side. Dr. Hartweger also diagnosed plaintiff with depression, for which he prescribed medication. He referred plaintiff to Hopewell Clinic,[17] and medical personnel at the clinic also diagnosed plaintiff with depression.

---

[16] The ALJ was also critical that Dr. Naseer did not have the hospital records at the time he rendered his opinion. If the ALJ considered the hospital records to be so significant, he could have sent the hospital records to Dr. Naseer and obtained his opinion from him regarding the CT scan. Pursuant to 20 C.F.R. § 404.1624(c)(3).

[17] The ALJ also questioned plaintiff's credibility because he had never been referred to a psychiatrist, psychologist, or other mental health professional for treatment. The ALJ was mistaken. Dr. Hartweger referred plaintiff to Hopewell Clinic for mental health treatment. Tr. 228.

14

It is true that generally a one-time examining consultant's opinion is given little weight if that opinion is contradicted by the opinion of a claimant's treating physician or with the record as a whole. See, e.g., Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001); Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000). But this is not the case here. Dr. Naseer's medical assessment is not contradicted by other neurological evidence. His evaluation was detailed and based on medical observations. The ALJ's statement that Dr. Naseer is not credible because the limitations he assessed were not supported by medical evidence is not persuasive. In sum, the Court believes that the ALJ did not provide sufficient reasons for giving Dr. Naseer's opinion no weight. See Pruitt v. Astrue, No. 1:08CV20 LMB, 2009 WL 877695, at * 16 (E.D.Mo. March 30, 2009) (reversing and remanding case where ALJ did not consider the opinions of examining consultants with regard to the plaintiff's mental impairments).

The Court is also concerned that there is medical evidence in the record that plaintiff suffered from major depression. Although he took medication, plaintiff continued to have moderate possibly even extreme limitations in areas such as understanding simple instructions and completing a normal workday without interruptions from symptoms. This evidence was in the records from Hopewell Clinic. It appears the ALJ did not have many of these records when he wrote his decision, although they were submitted to the Appeals Council. The Court is unsure, however, whether the Appeals Council took the Hopewell Clinic records into consideration when it denied plaintiff's appeal.

When, as here, "'the Appeals Council has considered new and material evidence and declined review,[the district court] must decide whether the ALJ's decision is supported by substantial evidence in the whole record, including the new evidence.'" Gartman v. Apfel, 220 F.3d 918, 922 (8th Cir. 2000) (quoting Kitts v. Apfel, 204 F.3d 785, 786 (8th Cir.2000)). The ALJ did not find

15

plaintiff suffered from a non-exertional impairment, and in fact, he discounted plaintiff's claims of depression. The Court, however, finds there is medical evidence that plaintiff suffered major depression that resulted in functional limitations, even though he was on medication. The ALJ should take into account the Hopewell Clinic records when he reconsiders plaintiff's claim.

The ALJ should consider the Hopewell Clinic evidence not only when making his disability determination, but the evidence should be taken into account when determining whether to elicit testimony from a vocational expert. Gray v. Apfel, 192 F.3d 799, 802 (8th Cir. 1999) ("when a claimant is limited by a non-exertional impairment, such as pain or mental incapacity, the Commissioner may not rely on the Grids and must instead present testimony from a vocational expert to support a determination of no disability.").

The result of the above deficiencies in the ALJ's findings and reasoning is a decision that is not supported by substantial evidence. The Court cannot say as a matter of law that substantial evidence supported the ALJ's determination that plaintiff did not have an impairment or combination of impairments listed in or medically equal to one contained in 20 C.F.R. pt. 404, subpt. P, app. 1. Tr. 20. The ALJ found that Plaintiff retained the residual functional capacity (RFC) to perform the physical exertional and nonexertional requirements of all work, except possibly for lifting or carrying more than 25 pounds frequently or more than 50 pounds occasionally. Tr. 20. RFC is a medical question, and the ALJ's assessment must be supported by substantial evidence. Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001) (citations omitted). The ALJ has the responsibility of determining a claimant's RFC " 'based on all the relevant evidence, including medical records, observations of treating physicians and others, and [claimant's] own description of her limitations.'" Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir.

1995)). Here, there is no medical evidence to supported the ALJ's RFC determination, and in fact, Dr. Naseer's opinion calls into question whether plaintiff could even have performed sedentary work. There is also evidence, which the ALJ did not consider, that plaintiff does have non-exertional limitations that would impact his ability to work. Therefore, the undersigned will remand the case for further development of the record. See Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000) (reversing and remanding case where ALJ failed to seek an RFC opinion from treating physicians or order consultative examinations and instead drew upon his own inferences from the medical reports).

## IV. Conclusion

The Court does not believe that the Commissioner's decision is supported by substantial evidence on the record as a whole. However, the Court does not believe that here there is overwhelming evidence that would warrant an order that benefits be awarded. Buckner v. Apfel, 213 F.3d 1006, 1011 (8th Cir. 2000) (ordinarily when a reviewing court concludes that a denial of disability benefits was improper, the court should, out of deference to the ALJ, remand the case for further administrative proceedings unless the record overwhelmingly supports such a finding of disability). The undersigned finds that this case should be remanded to the ALJ for (1) reconsideration of plaintiff's residual functional capacity in light of Dr. Naseer's opinion, (2) reconsideration of plaintiff's non-exertional limitations in light of the records from Hopewell Clinic; and (3) reconsideration of whether testimony of a vocational expert is needed in this case.

Accordingly,

**IT IS HEREBY ORDERED** that the Court declines to adopt the Report and Recommendation of the United States Magistrate Judge. [Doc. 26]

**IT IS FURTHER ORDERED** that the decision of the Commissioner is **REVERSED.**

**IT IS FURTHER ORDERED that this case is REMANDED** to the Commissioner for further proceedings consistent with this memorandum and order pursuant to sentence four of § 405(g).

An appropriate judgment will accompany this order.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this 24th day of March, 2011.